AYRES, Judge.
This action in tort results from a collision between plaintiff’s Chevrolet pick-up truck and defendant’s Nash automobile occurring in the Town of Winnfield about 11:00 o’clock P. M., June 13, 1952. Plaintiff charged defendant with responsibility for the accident and sought recovery for damages to his truck. Defendant denied any act of negligence on his part and asserted that the negligence of plaintiff’s minor son, the driver of the truck, was the sole and proximate cause of the accident and in reconvention prayed for judgment against the plaintiff for damages to his automobile. From a judgment in favor of plaintiff for $319.52 defendant prosecutes an appeal to this court.
This appeal presents entirely questions of fact. The accident occurred on U. S. Highway 167, a state paved highway of the standard width of 18 feet, with the usual dirt and/or gravel shoulders, immediately south of. its intersection with Lafayette Street in the Town of Winnfield. Lafayette Street runs in a general east and west course and at its eastern end intersects said highway at approximately right angles, from which intersection the highway continues south. Located immediately off the right of way in the corner of the intersection are a filling station and cafe, the approaches to which are hard-surfaced. Near the right of way line and farther into the corner of the intersection is a large oil company sign, supported by a metal post. On the opposite side of the highway, at the beginning of the curve, is a highway arrow sign denoting a change in the course of the highway as it enters and curves westward into Lafayette Street. This sign would be in line approximately with the south boundary of Lafayette Street if extended across the highway. Approximately 121 feet south of the aforesaid sign is the usual highway curve sign.
On the occasion of the accident in question, Russell Sullivan, plaintiff’s son, 18 years of age, driving his father’s pick-up truck, left a hospital in Winnfield near 11:00 o’clock P. M., with the intention of returning to his father’s residence located some 3 or 4 miles south of town on Highway 167. After proceeding eastward on Lafayette Street, he made the turn to the right into U. S. Highway 167, which, from the intersection, continued down-grade for several hundred feet, and when about 50 feet south of the intersection, met and collided with defendant’s automobile, driven northward by defendant, up the incline towards Lafayette Street.
Although plaintiff charged the defendant with negligence constituting the alleged sole and proximate cause of the accident, in failing to keep a proper lookout or to keep his car under proper control and in driving on the left-hand side or in the wrong lane of traffic, in a careless and reckless manner, and at an excessive and unlawful rate of speed, in violation of both state laws and municipal ordinances, and although identical specifications of negligence were charged by defendant to plaintiff’s minor son, with the additional charges that the son attempted to negotiate a sharp curve abruptly and at an unsafe rate of speed, that he failed to yield one-half of the highway to -defendant, that he was a youthful, inexperienced driver, inclined to recklessness and disregard of the rights and safety not only of himself but also others as well, and that he was operating the truck *58 without having first procured a driver’s license authorizing him to do so1, the decision of the case depends upon a resolution of the question of whether the collision occurred in the west traffic lane or in the east traffic lane of the highway. This question was resolved by the trial court in favor of the plaintiff in holding that the accident occurred on the west side of the center line of the highway.
Defendant, in the alternative and only in the event he was held negligent in any respect, plead that plaintiff’s driver was contributorily negligent, barring plaintiff’s recovery.
Plaintiff’s witnesses, in addition to himself and son, were the city officer and state trooper, who investigated the accident, and a taxicab driver. The only eyewitnesses were young Sullivan, the driver of the truck, the defendant, Reder, who was driving his automobile, and his five companions, who were relatives or close friends. It is to be noted that the taxi driver, Melvin Nation, also claimed to have witnessed the accident and was called by plaintiff as a witness in rebuttal.
Testifying on behalf of defendant, in addition to himself, wife and companions, were Jesse Johnson, his father-in-law, and Charlie Johnson, residents of Winnfield. The testimony on behalf of the defendant is to the effect that he was proceeding on his side of the highway up the slight incline at approximately 25 miles per hour when plaintiff’s truck was seen approaching the intersection on Lafayette Street at a speed estimated from 40 to 45 miles per hour, first swerving toward the oil company’s signpost at the corner of the intersection and then abruptly swerving back to the left and across into the east traffic lane of the highway, the truck’s left-hand side as it turned south, striking the left front and side of and side-swiping defendant’s car, jamming the left doors and caving in the side of the car to such an extent that the doors would not open, requiring the driver and the occupants of the car to alight through the right-hand doors. Defendant’s car stopped immediately following the impact on its side of the highway, where it remained until the city officers arrived and directed its removal from the highway in the interest of passing traffic. It had been, thus removed before state trooper Sanford Jordan arrived about an hour later and made the investigation and report of the accident. The truck proceeded several hundred feet down the highway, where it stopped or was brought to a stop by its. driver.
Irreconcilable with defendant’s testimony is plaintiff’s evidence, whose driver claims-that defendant was driving at an excessive speed on the wrong side of the road and,, therefore, in the truck’s lane of traffic, and that the car ran into the truck, striking its left side, which was traveling at some 20-to 25 miles per hour.
With the conclusions reached by our most learned and eminent brother of the district court and with whose judgment we are reluctant to disagree, and who was persuaded that the accident occurred to the west of the center line of the highway and, therefore, in the truck’s lane of traffic, basing his opinion on the testimony of young Sullivan, Trooper Jordan, City Officer Marlin Connor, and the taxi driver,, Melvin Nation, we find ourselves, after thorough review and consideration of the entire record, unable to agree. From our appreciation and understanding of the evidence, the erroneous conclusion reached by the trial judge is manifest.
The version of the accident as detailed by young Sullivan, to wit:
“Well, I was coming from the hospital around the curve and done made the curve. I seen the car coming. He was definitely on my side of the road. I seen him coming. I made a swerve to miss him. I was on my side of the road. When he rounded the curve he took my part of the road to make the curve and just run in and hit my side of the truck and took the door and back panel of the truck,”
is weakened by subsequent testimony of this and other witnesses. For instance, *59 when questioned about physical evidence showing- where the collision occurred in the highway, he stated:
“There was glass all up there from about SO feet from the curve. Glass scattered on the ground. * * * It was on both sides (of the road)”.
Jordan, who reached the scene of the accident about an hour after its occurrence, based his testimony, other than from his observation of a few physical facts, on hearsay. His observation was principally confined to the existence of some dirt on the highway 10 or 12 inches west of the center line and to some glass which he says was “pretty well” scattered. On cross-examination he admitted he could not say from which vehicle or from what part of the vehicle the dirt was dislodged. Much the same was the testimony of the City Police Officer Connor. The impact, according to his observation of the dirt on the street, was “right on the black line or a fraction to the right of the black line going south”. This slight physical indication was insufficient to establish to any degree of certainty .that the impact occurred across the center line from defendant’s traffic lane.
Melvin Nation testified that he was driving a taxi into Winnfield in the vicinity of the accident when he was overtaken by defendant’s car, which passed him at a fast speed and hit the truck on its side of the highway. None of plaintiff’s witnesses, not even Russell Sullivan, contended that defendant’s car was proceeding abreast of another car or in any manner attempted passing or had passed a car immediately preceding the collision. Although defendant’s car, so Nation said, “cut right out in front of me and the man driving the car dead-hit the truck”, he never stopped but drove into town to the taxi stand, a half block from the police station, without reporting the accident. The six individuals in defendant’s car testified that from the time they crossed the T. & G. Railroad tracks at the foot of the incline, several hundred feet south of the point of collision, they never met or passed a car, coming or going. Nation’s testimony is, in our opinion, of such unconvincing character that we cannot give it the weight and consideration as did the trial judge; in fact, we are not impressed by his testimony to the extent that we could safely rely upon it as correctly stating the facts.
This case presents no exception to the general rule that the burden of proof is upon the plaintiff to establish his claims by a preponderance of evidence. The same rule equally applies to defendant in establishing his reconventional demand. A prerequisite to a judgment in favor of either plaintiff or defendant would be a finding from a preponderance of the evidence that the accident occurred in either one or the other of the traffic lanes of the highway and in which lane, that is, whether in the lane of plaintiff or defendant. From our review and appreciation of the evidence neither plaintiff nor defendant has borne the .burden of proof imposed upon him by law. If the evidence could be said to preponderate on any given point in the case and to determine any material fact, it would be that the accident occurred in the center of the highway and that the negligence of both drivers, in driving in the center of the highway without keeping a proper lookout and observing the approach of the other and without taking some precaution, constituted the proximate cause of the accident leading necessarily to the conclusion that both drivers were guilty of concurring negligence, precluding the recovery of either one against the other. We prefer, however, to base our conclusion and judgment on the proposition that neither plaintiff on his principal demand nor defendant on his reconventional demand has established that the other driver’s negligence was the sole and proximate cause of the accident. From this conclusion, it inevitably follows that the judgment appealed is erroneous insofar as awarding plaintiff damages.
For these reasons, the judgment in plaintiff’s favor is reversed, annulled and set aside and there is now judgment rejecting plaintiff’s demands at his costs; the judgment otherwise is affirmed.
Affirmed in part and reversed in part.